OSCAR ALEJANDRO PEREZ-GOMEZ
JEROME COUNTY JAIL
2151 SOUTH TIGER DRIVE
JEROME, IDAHO
83338

U.S. COURTS
OCT 17 2025
Rcvd____ Filed____ Time____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | CASE NO: 1:24-CR-00155-AKB-1 |
| VS: | DEFENDANTS SENTENCING MEMORANDUM AND OBJECTIONS |
| OSCAR ALEJANDRO PEREZ-GOMEZ Defendant, | |

COMES NOW, OSCAR ALEJANDRO PEREZ-GOMEZ, THE DEFENDANT HEREIN, WHO DOES NOW NOTIFIES ALL PARTIES TO THIS ACTION, THAT HE DOES FORMALLY OBJECTS TO CERTAIN INFORMATION BEFORE THE COURT, IN THE PSR, WHICH IS NOT CORRECT, AND THAT HE EXPRESSLY STATES THAT ON FEBRUARY 26TH, 2025, HE STEPPED INTO A

guilty plea to count 1 of the superceding Indictment, which alleges a violation of "21 USC § 841, (a)(1); (b)(1)(A), and 846.

A) The defendant has not plead guilty to any type of sentencing enhancement.

B). The defendant has not been found guilty of any sentencing enhancement.

C). In the case before this court there are several "co-defendants".

"Co-defendant" patrick Delacruz, entered a plea of guilty to count #8 of the superceding Indictment. He recieved a "safety valve" and was sentenced to a term of 36 months.

"Co-defendant" Artenio Hurtado entered a plea of guilty to count #1 of the superceding Indictment. He recieved a "safety valve" and was sentenced to a probationary term.

"Co-defendant" Leonardo Espinoza-Romero entered a plea to count #1 of the superceding Indictment. He was sentenced to a term of 122 months. He has filed an appeal as to this court

DENYING TO him A "DOWN WARD VARIANCE" AND OR "SAFETY VALVE" APPLICATION, WHICH ALSO ALLEGES A CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL FOR COUNSEL'S FAILURE TO PROPERLY ADDRESS HIS "DOWNWARD VARIANCE" AND OR "SAFETY VALVE" REQUESTS TO THE COURT.

IT IS BASED UPON THE FACT THAT THE DEFENDANT, AT THE PLEA COLLOQUY, ENTERED A PLEA TO A VIOLATION OF THE UNITED STATES CODE, TITLE 21, SECTION 841, (a)(1), AND (b)(1)(A), AND NOT TO ANY FACTOR THAT WOULD INCREASE HIS SENTENCE ABOVE THE STATUTORY MINIMUM OF 10 YEARS, THAT THE DEFENDANT DOES NOW SUBMIT THIS SENTENCING MEMORANDUM.

AS THIS COURT IS AWARE, THERE IS A MANDATORY MINIMUM SENTENCE OF 10 YEARS, (120 MONTHS), AS PRESCRIBED BY STATUTE FOR THE OFFENSE THE DEFENDANT HAS ENTERED A PLEA TOO.

HOWEVER, BASED UPON THE UNITED STATES SENTENCING GUIDELINES, 2D1.1, AND BECAUSE DEFENDANT, AT THE PLEA COLLOQUY, ENTERED A PLEA TO, "... 500 GRAMS OF METHAMPHETAMINE ...", HIS OFFENSE LEVEL IS 30.

BECAUSE THE CRIMINAL HISTORY OF THE DEFENDANT IS CATAGORY VI, (13 OR MORE), AND HIS OFFENSE LEVEL IS 30, IT BRINGS HIS GUIDELINES TO 168-210 MONTHS.

Also Important is the fact that the Defendant qualifies for a 3 level Downward Departure for, "Acceptance of Responsibility". Please see, 3E1.1 (b).

Because the Defendant does meet the criteria under 3E1.1 (b), the sentencing Guideline Range is 130-162 months, (Level 27 for the offense after Adjustment).

Importantly, and for the consideration of this court, All of the "co-defendants", or "co-conspirators" in this case, were assigned a Level 30, with no Enhancements that were not plead too at the plea colloquy.

Also very Important is the fact that the Defendant, and all "co-conspirators" or "co-defendants" Entered pleas of guilty within 20 days of each other. All other "co-defendants" have been Granted a 3 level Reduction of their offense level for Acceptance of Responsibility; and clearly the Defendant should be treated the same.

## A
## Argument of Law
## In Support of Sentence

The Defendant has clearly shown this court that his "Guideline Range", should be between 130-162 months. (Adjusted) level 27, Criminal History VI).

The defendant has been told, (Through counsel) That the Government seeks to "enhance" the offense level of the defendant, 6 levels to a level 36, which would require a sentence of 324 to 405 months. (Before an adjustment for acceptance of Responsibility.)

The 6 level "enhancement", from an offense level of 30 to a level of 36, is purported to be for the following: 2 levels for "Reckless endangerment"; 2 levels for "constructive possession of a firearm"; and 2 levels for "...Violence."

Effective November 1st 2025, Congress has "Repealed" the sentencing Guidelines 5K2.21 which was entitled "Dismissed and uncharged conduct".

5K2.21 used to state as follows:

"The court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason, and (2) that did not enter into the determination of the applicable guideline range."

As stated, 5K2.21 was repealed by

The United States Congress, and such Repeal is Effective on November 1st 2025, The Defendant being sentenced after November 1st 2025, should not face The Enhancements.

As This Court is aware "... The law in Effect at The time of The Commission of The crime Holds to any possible punishment, except if such Repeal or Amelioration of The statute, which Lessens the punishment, Then The defendant is entitled to such lesser punishment." This is one of The provisions of The United States Constitution, Article 1, section 10. In United States v. Warren, 980 F.2d 1300, at page 1304 (9th Cir. 1992), The Ninth Circuit Court of Appeals has held, "... A District Court is to apply The version of The Guidelines in effect at The time of sentencing." See also, United States v. Mooneyham, 938 F.2d 139, at page 140, (9th Cir. 1991); (Unless an earlier Amendment has made The penalty more severe at sentencing Than what it was when crime occured),

However, even if The above Repeal of 5K2.21 Did not Remove The Governments sought after 6 Level Enhancements, such enhancements would violate The United States Constitutions, 6th Amendment.

Cases from The United States Supreme Court support The Defendant, as Does prevailing case authority from The 9th Circuit Court of Appeals.

In, Apprendi v. New Jersey, 530 U.S. 466, at 490, 147 L.Ed.2d 435, 120 S.Ct. 2348, (2000), the United States Supreme Court held as follows:

"Other than the fact of a prior conviction, any fact that increases the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt."

Later, in Blakely v. Washington, 542 U.S. 296, 159 L.Ed.2d 403, 124 S.Ct. 2531, (2004), the United States Supreme Court held that

"... the 'statutory maximum', for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict, or admitted by the defendant."

In United States v. Booker, and, United States v. Fanfan, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed. 621, (2005) the United States Supreme Court made several landmark rulings.

First, the Court held that Apprendi and Blakely, supra, both apply to the sentencing guidelines in federal court.

Second, the Court held that the, "... the sentencing guidline range, established by the jury

verdict, or the facts admitted by the defendant, is the 'statutory maximum' under Apprendi and Blakely, supra.

Third, Booker and Fanfan, held that the United States sentencing Guidlines are only advisory.

...

In Alleyne v. United States, 570 U.S. 99, (2013), the United States Supreme Court clearly held that in regards to the United States sentencing Guidelines, it is the mandatory minimum that is to be treated as the "prescribed maximum sentence" under Apprendi v. New Jersey, this case over ruled Harris v. United States; (which held opposite of Alleyne).

When the defendant entered his plea of guilty to count #1, of the superceding indictment, he entered a plea to a violation of 21 USC § 841 a (1). He did not enter a plea to any enhancements, to any possible sentence. His sentence is thus controlled by § 841, b, (1), (A).

It is very very clear, beyond peradventure, "... any fact that increase a criminal punishment, above the prescribed maximum, must be submitted to a jury, (or admitted to by the defendant) and proved beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, (2000)." The sentencing guideline range, or statutory mandatory minimum sentence,

is to be treated as the 'prescribed maximum' sentence, for Apprendi purposes." Alleyne v. United States, 570 U.S. 99, (2013).

Therefore, because the contested 6 level enhancements, as sought by the Government, was not admitted to by the Defendant at the plea colloquy, and was not found by a jury, 'beyond a reasonable doubt,' they must not be allowed to be used against the Defendant. To do so would clearly, "...increase the punishment of the Defendant, above the prescribed statutory maximum," in violation of the 6th Amendment to the United States Constitution, and the relevant case authority.

"The touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an "element" or "ingredient" of the crime charged" United States v. O'Brien, 560 U.S. 218, at 224, 130 S.Ct. 2169, 176 L.Ed.2d 979, (2010); Apprendi, supra, at 483, Headnote 10.

Under Apprendi's definition of "elements" necessarily includes not only those that raise the maximum punishment, but also those that raise the mandatory minimum. Both kinds of facts alter the prescribed range of sentences to which a defendant is exposed, and do so in a manner that aggravates the punishment. Therefore, facts that increase the mandatory minimum sentence are therefore

elements and must be submitted by a jury and found beyond a reasonable doubt. Alleyne v. United States, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314, (2013), at Headnote #4.

As shown to this court, and as the pleadings before this court show (plea colloquy), the defendant, (like his co-defendants), entered a plea to guilty to count #1 of the superceeding Indictment, which, under the law of the statute, carries a mandatory minimum sentence of 120 months, or 10 years. As stated, because the defendant has accepted responsibility for his actions, he is susceptible to a 3 level downward departure, to a level 27, which would give him a sentencing range of 130-162 months.

However, all 3 of the "enhancements," which the government is attempting to add to the offense level of the defendant, do in fact violate the holding of Alleyne v. United States, supra, at Headnote #4, because they were not admitted to by the defendant at the plea colloquy, or submitted to a jury and found "beyond a reasonable doubt," these 3 enhancements violate the United States Constitution, Amendment Six, as it denies to the defendant due process of law.

Therefore, it is clear, the sentencing guidelines show a sentencing range of 130-162 months, with a mandatory minimum sentence of 120 months, as argued herein.

## B

## The Defendant is Eligible for a Safety Valve

Under the United States Constitution, Article 1, Section 10, "... The law in effect at the time of the commission of the crime holds to any possible punishment, except if a repeal or amendment of that law, ameliorates, or mitigates such punishment, the the criminal defendant is entitled to such lesser punishment."

Discovery material, in this case, shows that the investigation began in January 2023, and ended with the arrest of the defendant in June of 2024.

On May 21st 2021, the Ninth Circuit Court of Appeals decided the case of United States v. Lopez, 998 F.3d 431, (2021) where the court that the "Safety Valve" located at 18. U.S.C.S. §3553 (f)(1), requires a defendant to prove that he or she does not have All of the following: (A) more than 4 criminal history points (B) a prior 3 point offense, and (c) a prior 2 point violent offense. The failure of a defendant to not have All three of the above, would entitle the defendant to be eligible for safety valve relief, or to be able to be sentenced below any mandatory minimum sentence contained in statute.

The defendant faces a 10 year mandatory minimum sentence for a violation of 21 USC 841(a)(1), (B),(1),(A).

In The case of Pulsifer v. United States, 601 U.S. 124, (2024), (3-15-2024) The United States Supreme Court over Ruled Lopez, Supra, holding That, "... A Criminal Defendant seeking A Safety Valve must meet All The Criteria of 18 U.S.C.S. § 3553 (f)(1), in order to BE Eligible for Safety Valve Relief.

Therefore, in The ninth circuit, Between The Dates of May 12th 2021, (Date Lopez, Supra, was Ruled on), and March 15th 2024, (Date Lopez, Supra, was over Ruled), it was The law of The ninth circuit That A Criminal Defendant did not have to meet All 3 Criteria of 18 U.S.C.A § 3553, (f)(1), in order to BE Safety Valve Eligible. Between The Dates of May 12th 2021, and March 15th 2024, (For Those Defendants whose crimes occurred within Those Dates), All That was necessary to BE Safety Valve Eligible, was to meet 1 of The Criteria listed in 18 U.S.C.A. § 3553, (f)(1).

Clearly, The Defendant's Crime Fits Directly inBetween Those Dates.

Because The Defendant's crime occurred Between The Dates mentioned, The "law in Effect At The time of The Commission of The Crime carries Through to Any possible punishment." During The Above time period, Lopez, Supra, was The Law of The ninth circuit. it would BE A violation of The Ex Post Facto Clause of The United States Constitution, Article 1, Section 10, to not Allow The Defendant to have The use of Lopez, Supra.

FOR THE SAKE OF ARGUMENT, THE PROVISION OF THE UNITED STATES SENTENCING GUIDELINES ARE SUSCEPTIBLE TO THE PROVISION OF THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION. UNITED STATES V. WATERS, 771 F.3d 679, (2014); UNITED STATES V. ROSAS-DOMINGUEZ, 724 FED. APPX 567, (2018); SEE ALSO, UNITED STATES V. PEREZ-SALAZAR, 1999 U.S. APP LEXIS 17958.

THE DEFENDANT DOES NOT HAVE A PRIOR VIOLENT OFFENSE, AND THEREFORE, QUALIFIES FOR A SAFETY VALVE UNDER LOPEZ, WHICH WAS, "... THE LAW IN EFFECT AT THE TIME OF THE COMMISSION OF THE OFFENSE."

C

DEFENDANT REQUEST A 6 LEVEL DOWNWARD VARIANCE FOR "EXTRAORDINARY ACCEPTANCE OF RESPONSIBILITY" FOR SAVING ANOTHER INMATES LIFE.

THE DEFENDANT'S OFFENSE LEVEL, AS DESCRIBED ABOVE, IS LEVEL 30. (THIS IS BASED UPON THE METHAMPHETAMINE WEIGHT IN 2D1.1). HE THEN IS ELIGIBLE TO RECEIVE A 3 LEVEL DOWNWARD DEPARTURE FOR ACCEPTANCE OF RESPONSIBILITY. THIS LEAVES THE DEFENDANT AT LEVEL 27, WITH A CRIMINAL HISTORY OF VI, FOR 13 OR MORE POINTS. THE SENTENCING RANGE IS 130-162 MONTHS.

AS ARGUED ABOVE, THE DEFENDANT IS ELIGIBLE FOR A

Safety Valve application, under Lopez, supra, (which was the law in effect at the time of the commission of the crime).

The Defendant now seeks to avail himself of the safety valve and receive a downward variance, (not a departure), in the amount of 6 levels to a level 21, and a sentencing range of 77-96 months for "extra-ordinary acceptance of responsibility", as follows:

A). The Defendant has exhibited "extraordinary acceptance of responsibility". On or about June 9 2025, the Defendant found an inmate "hanging". (or who had hung himself). The Defendant began life saving action, including cardio-pulmary ressusitation, (C.P.R.), which saved the other inmates life.

Sheriff deputies, of the Jerome County Sheriff's office, have wrote letters concerning this incident to this court.

Counsel for the Defendant has copies of these letters, which should have been presented to this court.

B). The Defendant has availed himself of several "post arrest rehabilitative programs", which under the Sentencing Guidelines, should allow this court to grant to him a "downward variance" for these actions.

## C

## FACTS in support of Variance

The defendant submits to this court that there is relevant information "post arrest", which clearly supports a downward variance, below the mandatory minimum sentence as provided for by statute.

1). Attached to this motion, is a report compiled by officer Osborn at the Jerome County Sheriff's office, in Jerome Idaho.

Clearly, as depicted for therein, the defendant, and the actions of the defendant, have saved the life of another inmate, in an extra-ordinary act.

What action could be more deserving of a downward variance than this action?

2). Furthermore the defendant submits proof to this court of his "post arrest" rehabilitative efforts, by the completed college level course taken.

Attached heretofore are the transcripts of the college level classes the defendant has taken while confined in the Jerome County jail.

3). For a period of more than 9 months, the defendant was allowed to be a "trusty" at the Jerome County Jail. This required the defendant to work for 10 hours a day each day, or 70 hours a week. The duties of the position as a "trusty" included preparing and delivering meals to the inmate population, washing, drying and changing

The Inmate Uniforms and Bedding, Twice weekly, as well as cleaning the whole jail.

4). Finally, The Defendant is currently enrolled in the H.O.P.E. class at the Jerome county jail. The H.O.P.E. class is the Equivalent to an "In-patient" Drug and alcohol class, and this court has Recently allowed a Downward Variance for this class. please see United States v. Smith, 1:24-CR-00099-BLW.

D

Argument of Law

The United States Sentencing Guidelines, at 3E1.1, at Application note (1),(6), makes it clear that a Downward Variance is available for "Post arrest Rehabilitation."

Located under the "Acceptance of Responsibility" section of 3E1.(a), That application note (1)(G) is located, which states that, "post offense Rehabilitative efforts, combined with the timeliness of such conduct, [(1) (H)], can Result in a two point level decrease."

The United States Supreme Court, in the case of Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed 2d 445, (2006), Engaged in a Lengthy Discussion as to How a "Downward Variance", (which is not a Downward Departure), can be utilized to achieve a sentence below the mandatory minimum of the Sentencing Guidelines. This case clearly shows how such variance is to be applied.

LATER, THE UNITED STATES SUPREME COURT, RELYING UPON GALL V. UNITED STATES, SUPRA, IN PEPPER V. UNITED STATES, 562 U.S. 476, 131 S.CT. 1229, 179 L.ED.2D 196, (2011), UNDISPUTABLY HELD, "...POST ARREST REHABILITATION IS TO BE CONSIDERED PART OF THE DEFENDANT'S CHARACTERISTICS' UNDER 18 U.S.C. §3553 (a), (1), AND should BE APPLIED AS A "DOWNWARD VARIANCE". PLEASE SEE HEADNOTES # 12, 13, AND 14 OF PEPPER, SUPRA.

THE 9TH CIRCUIT HAS FOLLOWED THE PROCEDURE AS WAS ESTABLISHED IN GALL, AND PEPPER, SUPRA. PLEASE SEE UNITED STATES V. RUFF, 535 F.3d 999, (2008); UNITED STATES V. THOMPSON, 2025 U.S. APP. LEXIS 6178.

FURTHERMORE, THE UNITED STATES SENTENCING GUIDELINES, 5K2.0, (a), (1), (A), (2) STATES, "...DEPARTURES BELOW THE MANDATORY MINIMUM IS AVAILABLE WHERE CIRCUMSTANCES OF A KIND NOT ADEQUATELY TAKEN INTO CONSIDERATION BY THE GUIDELINES EXIST. THESE TYPES OF "CIRCUMSTANCES" EXISTS IF THE CASE IS OF THE TYPE WHICH TAKE IT OUT OF THE "HEARTLAND" OF CASES." (HEARTLAND IS THE NORMAL CASE).

SEE ALSO, THE UNITED STATES SENTENCING GUIDELINES AT 5C1.2, WHICH CLEARLY LAYS OUT THE CRITERIA FOR IMPOSING A SENTENCE BELOW THE GUIDELINES, BUT PLACES A LIMIT OF 24-30 MONTHS OF A DEPARTURE FOR THOSE CRIMES WHICH CARRY A MANDATORY MINIMUM OF 60 MONTHS OR MORE.

The main "crux" or theme of this issue is that the Defendant has clearly, beyond peradventure, shown that he should have a downward variance granted to him for the reasons as cited.

Once more, to clearly detail why such a downward variance should be granted, here are the reasons more fully explained:

1). In June 9 of 2025, while living in Pod 800 at the Jerome County Jail, the defendant observed another inmate with a noose around his neck. The inmate had placed the noose around his neck, then had pulled the other end around his foot, (a knot had been tied so that once pulled tight the knot would not loosen). The inmate was unconscious, the Defendant took the noose off, began chest compressions, which allowed officer's, Carter, Tapia, and Cpl Osborn enough time to respond. Because of the actions of the Defendant the life of the other inmate has been saved.

This incident has been well documented by Cpl Osborn of the Jerome County Jail and a copy of this incident log is in the possession of the mitigation specialist.

Though these actions were done as a "life

saving measure," and the defendant performed these actions out of "instinct," it is clear that this act should be seriously taken into account by this court under title 18, section 3553, (a) (1), as part of the defendants characteristics. Please see, Gall v. United States, supra, Pepper v. United States, supra.

The defendant would ask this court for a "downward variance" for "exceptional acceptance of responsibility", and grant to the defendant a 6 level downward variance for this conduct.

2). The defendant has applied himself, while incarcerated within the federal holding facility, i.e., the Jerome county jail, of some college level self-help programs. Attached heretofore is the transcripts of the classes to which the defendant has graduated.

The defendant has taken "Thinking for a change," "cognitive awareness" and various other college level classes that are clearly designed to assist the defendant into changing criminal thinking.

3). For a period of nine months, (approximate), the defendant was allowed to work as a "trusty" at the Jerome county jail. Under the "First Step Act", codified as, 18 U.S.C. 3624, (g).

if the Defendant would have been sentenced, for the actions of being a "trusty," he would have recieved an, "... additional 5 days a month good time ...". But because he was not a sentenced prisoner the Federal Bureau of Prisons will not grant to the Defendant any credit for being a trusty.

4). Currently the Defendant is enrolled in the H.O.P.E. class. The H.O.P.E. class is a christian based program that is considered to be equivilant to an "in-patient" drug and alchol program. As previously stated, in several cases, this court has allowed a "downward variance" for attendance in this program. The success rate of an "in-patient" drug or alchol program is about 13%. The success rate of the H.O.P.E. program borders on the 97% ratio. This is based on a national average.

However, and inasmuch, because the Defendant is not a sentenced federal prisoner, the Federal Bureau of prisons will not grant to the Defendant any type of sentence credit, even under the First Step Act.

## Conclusion

Because the Defendant has shown an

"EXTRA-ORDINARY" POST OFFENSE REHABILITATIVE EFFORT, AND BECAUSE OF HIS EXEMPLARY BEHAVIOR IN SAVING ANOTHER PERSONS LIFE, THE DEFENDANT WOULD ASK FOR A TOTAL, COMBINED DOWNWARD VARIANCE IN THE AMOUNT OF A 6 LEVEL DOWNWARD VARIANCE.

IF THIS COURT GRANTS TO THE DEFENDANT HIS SOUGHT AFTER VARIANCE, AND IF THIS COURT USES THE GUIDELINES AS A STARTING POINT IN COMPUTING A SENTENCE, THEN IT IS RESPECTFULLY REQUESTED THAT THIS COURT ORDER A SENTENCE AS FOLLOWS:

OFFENDER CRIMINAL HISTORY IS VI, FOR 13 OR MORE POINTS. OFFENSE LEVEL 30 FOR THE WEIGHT OF DRUGS AT 500 GRAMS, UNDER 2D1.1. APPLY A 3 LEVEL DOWNWARD "DROP" ACCEPTANCE OF RESPONSIBILITY. THEN, BECAUSE THE DEFENDANT IS SAFETY VALVE ELIGIBLE, A FURTHER 6 LEVEL DOWNWARD "DROP" TO A LEVEL 21. THIS 6 LEVEL DROP COVERS "EXTRAORDINARY ACCEPTANCE" OF RESPONSIBILITY, AND POST ARREST REHABILITATIVE EFFORTS. SENTENCING RANGE IS 70-96 MONTHS.

THIS WOULD CERTAINLY BE IMPOSING A SENTENCE THAT WOULD PROMOTE RESPECT FOR THE LAW, YET PUNISHING THE DEFENDANT FOR HIS ACTIONS. IT WOULD ALSO ACT TO IMPOSE PUNISHMENT THAT IS COMMENSURATE TO OTHERS CONVICTED OF THE SAME OFFENSE, AND YET GRANT TO THE DEFENDANT A DOWNWARD VARIANCE TO THE DEGREE THAT IS ACCEPTABLE TO THIS COURT AS SHOWN IN OTHER CASES BEFORE THIS COURT.

OATH OF DEFENDANT

Comes now, OSCAR A. PEREZ-GOMEZ, THE DEFENDANT HEREIN, WHO DOES AVER AND STATE THAT THE CONTENTS OF THIS MOTION ARE TRUE AND CORRECT TO THE BEST OF HIS KNOWLEDGE AND BELIEF, UNDER THE PENALTY OF PERJURY.

9-23-25
DATE

Oscar Perez
OSCAR A. PEREZ-GOMEZ, DEFENDANT